**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:18 CV 1753** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **$39,000.00 in U.S. Currency,** | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court in this civil forfeiture case is the United States' Motion for Summary Judgment on the Issue of Standing etc. **Doc #: 12**. For the following reasons, the Motion is **GRANTED**.

**I.**

On March 13, 2018, Addonisse Wells was a ticketed passenger on a flight departing Cleveland Hopkins International Airport destined for Houston, Texas. Doc #: 1 ("Comp.) ¶ 6. Routine screening of his carry-on luggage alerted for the presence of an organic bulk mass, leading TSA to conduct an examination of the luggage. *Id*. ¶¶ 7, 8. After discovering several rubber-banded bundles of mixed-denomination U.S. currency, TSA notified the Cleveland Police Department ("CPD"). *Id*. ¶¶ 9, 10. Upon determining that the large amount of U.S. currency was likely the proceeds of criminal activity, the CPD referred the matter to Homeland Security Investigations ("HMI") for further investigation. *Id*. ¶ 11. An HSI agent and Task Force Officer asked Wells to accompany them to the HSI office where he was interviewed. *Id*. ¶¶ 10, 11.

Wells stated that the bag and all its contents belonged to him and that he was carrying $39,000.00 in U.S. currency. Comp. ¶ 12. He explained that while he lives in Houston, he does all his banking in Cleveland. *Id*. Wells claimed he had taken all the currency out of the Cleveland bank on various dates, but was unable to provide any bank receipts. *Id*. ¶ 14. Wells asserted that he was originally from Cleveland and owns a real estate business, but would not provide the name of his business, nor the locations of any real property he owns. *Id*. ¶ 15. Wells provided a contact phone number, but then stated he would be changing the phone number the next day to avoid further contact by law enforcement. *Id*. ¶ 16. Wells stated that he had served 6-plus years in prison and was currently on federal probation for a drug conviction. Comp. ¶ 17. A certified drug-detection canine alerted positive to the odor of narcotics on the currency. *Id.* ¶ 19. Wells has a drug-related criminal history that includes a 2012 conviction for conspiracy to possess with intent to distribute heroin in the U.S. District Court for the Northern District of Ohio, and arrests in Cleveland, Ohio for possession of drugs in 2005 and 2007. *Id*. ¶ 19. Based on these circumstances, HSI seized the $39,000.00 in currency. *Id*. ¶ 20.

On July 30, 2018, the United States filed a Complaint in Forfeiture against the Defendant Currency alleging that it is subject to forfeiture under 21 U.S.C. § 881(a)(6) in that the funds constitute proceeds from illegal drug trafficking activities and/or were used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. §§ 841(a) and/or 846. Comp.1 ¶ 5.

On August 14, 2018, Wells filed a Verified Claim. Doc #: 4. Wells asserts that he was "the sole and absolute owner of the monies," he was "in sole and exclusive possession of all of these monies when it was unlawfully removed from [his] exclusive possession and control," and he continues "to be victimized by the illegal retention of the funds here involved." *Id*.

## II.

### A.

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c) and *LaPointe v. UAW Local 600*, 8 F.3d 376, 378 (6th Cir. 1993)). The burden of showing the absence of genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*United States v. $99,500.00 in U.S. Currency*, 339 F.Supp.2d 690, 694 (N.D. Ohio 2018) (citing *Celotex*, 477 U.S. at 323, in turn quoting Fed. R. Civ. P. 56(c)). The nonmoving party must present significant probative evidence to demonstrate that there is [more than] some metaphysical doubt as to the material facts." *Id.* (citing *Moore v. Philip Morris Cos., Inc.*, 8 Fed.3d 335, 340 (6th Cir. 1993)). That is, the nonmoving party may not rely on its pleadings, but must produce evidence that results in a conflict of material fact to be solved by a jury." *Id.* (citing *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment. If the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

**B.**

Federal law governing civil in rem forfeiture actions gives the government the authority to seize items it suspects were used in furtherance of criminal activity, and to commence civil forfeiture proceedings against the property without charging the property's owner with a crime. *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 344 (6th Cir. 2017). The Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983, sets forth the General Rules for Civil Forfeiture Proceedings, and allows persons claiming an interest in that property to do so in the manner set forth in the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Civil Forfeiture Actions ("Rule"). 18 U.S.C. §§ 983(a)(4)(A), (B). Rule G governs pleadings, discovery, and motion practice in civil forfeiture actions.

A person who wishes to intervene and assert an interest in the property in a civil forfeiture case must file two responsive pleadings: a verified claim and an answer. Rule G(5). The verified claim must identify the specific property claimed, identify the claimant, state the claimant's interest in the property, and be signed by the claimant under penalty of perjury. Rule G(5)(a)(I). The mere assertion of ownership in a verified claim or answer is sufficient to confer standing over the property at the pleading stage. *$31,000.00 in U.S. Currency*, 872 F.3d at 350 ("Rule G(5) requires claimants to do no more than identify themselves and state their interest in the property subject to forfeiture.")

Rule G(6)(a) allows the government, at any time after the verified claim is filed and before discovery closes, to serve "special interrogatories" seeking information *testing* the claimant's assertion of ownership over the defendant currency. *United States v. $46,340.00 in U.S. Currency*, No. 3:18 CV 86, 2019 WL 481168, at *4 (N.D. Ohio Feb. 7, 2019). "The

purpose of this rule is to permit the government 'to gather information that bears on the claimant's standing.'" *Id.* (quoting Rule G Advisory Committee's Note (subdivision (6)).

Rule G(8)(c) allows the government, at any time before trial, to move to strike the claimant's claim or answer for failing to comply with Rule G(5) or (6), or because the claimant lacks standing. The motion to strike may be presented as a motion for summary judgment. Rule G(8)(c)(ii)(B).

Standing is a threshold matter in a civil forfeiture case as well as any other federal case. *$99,500.00 in U.S. Currency*, 339 F.Supp.2d at 695 (citing *United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013)). Thus, before the Court can address any other issue a claimant raises (e.g., the lawfulness of a search or seizure in a motion to suppress), the claimant must meet its burden of establishing Article III standing by a preponderance of the evidence. Rules G(8)(a), G(8)(c)(ii)(B).

To meet Article III's case-or-controversy requirement, a claimant must establish the three elements of standing: an injury in fact, a causal connection between the injury and the conduct complained of, and a likelihood that the injury will be redressed by a favorable decision. *$99,500.00 in U.S. Currency*, 339 F.Supp.2d at 696 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The evidentiary requirements for standing vary depending on the stage of litigation. *Id*.

At the pleading stage, a simple assertion of ownership is sufficient to confer standing. *$31,000.00 in U.S. Currency*, 872 Fed. 3d at 353 ("Requiring a forfeiture claimant to explain the nature of his ownership at the pleading stage would be asking the claimant to satisfy the government's burden of proof, or at least go a long way toward doing so."). However, to

withstand a motion for summary judgment challenging standing, a claimant cannot rely on the mere assertion of ownership articulated in a verified claim or answer, but must set forth, by affidavit or other evidence, specific facts supporting its ownership over the currency–which, for purposes of summary judgment, will be taken as true. *United States v. $31,000, 00 in U.S. Currency*, No. 1:16 CV 1581, 2018 WL2336814, at *4 (N.D. Ohio May 23, 2018) (citation omitted); *$46,340.00 in U.S. Currency*, 2019 WL 481168, at *4; *United States v. $23,000 in U.S. Currency*, No. 16 CV 2140, 2018 WL 3037378, at *3 (N.D. Ohio Jun. 19, 2018).

District courts have assessed Article III standing in civil forfeiture cases by requiring that a claimant have "colorable ownership" in at least a portion of the seized property. $23,000.00 *in U.S. Currency*, 2018 WL 2336814, at *3 (citing *$31,000.00 in U.S. Currency*, 872 F.3d at 348). "This means that a claimant must present 'some evidence of ownership' beyond the mere assertion of an ownership interest in the property.'" *Id*. (citing *United States v. Phillips*, 883 F.3d 399, 403 (4th Cir. 2018)).

### III.

Wells contends that the mere assertion of ownership set forth in his verified claim is sufficient to confer standing over the Defendant Currency.[1] In support, he cites *United States v.*

---

[1]Specifically, Wells argues:

> To begin with, surely, the Government is aware not only that the Court is powerless to dismiss Claimant's claim on the basis of standing to challenge this quest for forfeiture given the Sixth Circuit's Opinion in ***United States v. $31,000.00 in U.S. Currency, 872 Fed. 3d 342 (2017).*** Unquestionably, such standing to challenge the forfeiture is established through the filing of a verified pleading asserting ownership under Federal Rules of Criminal Procedure Rule G, which was done here. See **Doc. Entry No. 4**. Indeed, the fact is, simply put, the ruling is the "law of the case." Yet, Counsel persists in his belief the federal agents, here, are really above the law. Of course, we know we cannot only operate on any belief they have any legal basis to arbitrarily stop people inside the area assigned to the TSA inside the zone they use at these airports to screen passengers

*$31,000.00 in U.S. Currency*, 872 F.3d 342 (6th Cir. 2017). Standing having been *allegedly* established, Wells further contends that the burden is now on the Government to prove the lawfulness of the search and seizure by a preponderance of evidence. He is wrong on both counts.

Wells cannot rely on the Sixth Circuit decision in *$31,000.00 in U.S. Currency* to support his contention that he has sufficiently established standing at the summary judgment stage of litigation. There, the government moved to dismiss the verified claim in the district court before it engaged in any discovery. The government argued, before the district court and on appeal, that a claimant's pleadings must do more than assert a bare ownership in the property that is the subject of the forfeiture. More specifically, the government argued that a forfeiture claimant's pleadings must provide the government with sufficient details allowing it to draft special interrogatories to test the claimant's assertion of ownership rather than conducting a fishing expedition through rounds of special interrogatories on the threshold issue of standing. The Sixth Circuit reversed, holding that the mere assertion of ownership in a verified claim is sufficient to satisfy Article III standing and the procedural requirements of Rule G *at the pleading stage*. 872 F.3d at 351. The Sixth Circuit explained, "We have no doubt that the lawyers of the United States Attorney's Offices within the Sixth Circuit have the capacity to

> before they can board airplanes. This, in the wake of a passenger's assertion that he will forgo flying due to the foregone conclusion that he would miss the flight if subjected to extended detention by such TSA agents. And do this in an effort to get their consent to search their bags for items they can seize in the name of the United States.

Doc #: 14 at 1.

-7-

draft useful interrogatories that will either confirm a claimant's interest in the *res* or expose the futility of the claim. They do not need our hand on the scale." *Id*. at 354-55.

Here, we have moved *well beyond* the pleading stage, and Wells has refused to respond to any questions in discovery supporting his naked assertion that he is the owner of the Defendant Currency. In response to interrogatories, Wells, invoking his 5th Amendment privilege against self-incrimination, refused to:

-state with particularity his interest in the Defendant Currency,

-state when, where and how he acquired the Defendant Currency or came into its possession,

-identify the financial institution or bank account involved in delivering the Defendant Currency,

-identify his employment since January 1, 2013 to the present,

-identify all sources of additional income,

-state the gross income, adjusted taxable income and taxable income he reported to the Internal Revenue Service since January 1, 2013,

-identify the names of all business entities in which he had been an officer, director, manager, or agent in the last 5 years,

-identify all property, real or personal, which he purchased since January 1, 2003 for sales prices in excess of $2000

-identify every personal and/or business savings account, checking account or investment account which he owned over the last 5 years,

-explain why the Defendant Currency was bundled in multiple denominations and wrapped in rubber bands if it had been withdrawn from a bank,

-explain why he didn't use a Cleveland banking institution with branches in Houston, Texas, and

-explain why he intended to change his phone number the day after the seizure of the Defendant Currency so as to avoid further contact by law enforcement.

Doc #: 12-1. At deposition, he again invoked the Fifth Amendment and refused to answer any questions supporting his assertion of ownership over the Defendant Currency– his lawyer having announced that Wells would only answer questions regarding circumstances at the airport and testing the *legality* of the seizure. Doc #: 12-2.

"Circuit courts agree that 'a district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause.'" *$31,000.00 in U.S. Currency*, 2018 WL 2336814, at *5 (citing First, Second and Sixth Circuit decisions)*; $99,500.00 in U.S. Currency*, 339 F.Supp.2d at 697 (same). District Judge Patricia A. Gaughan[2] recently concluded that a district court may strike the nonresponsive testimony of a forfeiture claimant based on his use of the Fifth Amendment to avoid answering relevant questions during discovery–questions aimed at testing that claimant's assertion of ownership in its pleadings. *Id*. (citing *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640 (9th Cir. 2012) and *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008)); accord *$46,340.00 in U.S. Currency*, 2019 WL 481168, at *5. Striking the assertion of ownership in a verified claim following discovery leaves the record devoid of any claim of ownership to seized currency. *$31,000.00 in U.S. Currency*, 2018 WL 2336814, at *5*; $99,500.00 in U.S. Currency*, 339 F.Supp.2d at 699; *$46,340.00 in U.S. Currency*, 2019 WL 481168, at *5. Without a claim of ownership, a claimant is unable to meet its burden of establishing, by a preponderance of the evidence, standing at the summary judgment stage. *Id*. Because Wells has refused to provide

---

[2]Judge Gaughan's decision is presently pending before the Sixth Circuit Court of Appeals, No. 18-3701. The undersigned plainly agrees with Judge Gaughan's thorough analysis.

any evidence supporting his claim of ownership, the Court strikes that claim, and grants the pending summary judgment motion for lack of standing.

Even if the Court did not strike the verified claim, the Court would still grant summary judgment. *$23,000.00 in U.S. Currency*, 2018 WL 3037378, at *3 (denying as moot the government's motion to strike, but granting the government's summary judgment motion for lack of standing). District Judge Donald C. Nugent recently explained:

> The Sixth Circuit has made it clear that while a claimant does not have to spell out his interest in the seized property at the outset of the case, Special Interrogatories are specifically used to "either confirm a claimant's interest in the res or expose the futility of the claim." *$31,000.00*, 872 F.3d at 354-55. Claimants should not be permitted to use the Fifth Amendment as a way of frustrating the government's attempt to determine the nature of their asserted ownership interest. *$31,000.00*, 2018 WL 2336814, at *6. Having provided no evidence to support the claim of ownership to the seized currency, [the claimant] is unable to meet his burden of establishing standing at the summary judgment stage. See *$31,000.00*, 2018 WL 2336814, at *7. Therefore, the United States is entitled to summary judgment.

*Id.*, 2018 WL 3037378, at *3. Wells has every right to invoke the Fifth Amendment privilege against self-incrimination in response to the government's questions regarding the source and nature of his ownership interest in the Defendant Currency. And it is no surprise he has done so here, given that he was on supervised release following 6-plus years incarceration for drug-trafficking in this very district when the Currency was seized. It is well-established that a naked claim of ownership is not <u>evidence</u> of ownership. As Wells has provided no evidence supporting his claim of ownership, let alone a preponderance of the evidence, he has failed to meet his burden of establishing standing to contest the forfeiture. Accordingly, the Court grants summary judgment on this basis as well.

Only a party with standing, i.e., one who has provided evidence of ownership of the property in question, has the right to contest the lawfulness of the seizure of that property in a

civil forfeiture proceeding.  Rule G(8)(a).  As Wells has failed to establish standing, the Court need not consider his assertion that the Government did not have probable cause to seize the Defendant Currency.  *United States v. $57,888.00 in U.S. Currency*, No. 5:10 CV 2022, 2011 WL 2972106, at *2 (N.D. Ohio 2011) (citing *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987)).

**IV.**

For the foregoing reasons, the Court **GRANTS** the United States' Motion for Summary Judgment on the Issue of Standing, **Doc #: 12**.

**IT IS SO ORDERED.**

              */s/ Dan A. Polster  June 6, 2019*
              **Dan Aaron Polster**
              **United States District Judge**